UNITED STATE DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RONALD DAVIDSON,

                Plaintiff           TRABOUT
                                                    DECLARATION
-vs-

                                                        **Docket No: 03-CV-0121**

UDAY DESAI, et al.,

                Defendants.
_____

      **Marshall Trabout**, **M.D.** declares under penalty of perjury, pursuant to 28 U.S.C. §1746, that the following is true and correct:

    1.  I am a medical doctor licenced to practice medicine in the State of New York. I am employed by the New York State Department of Correctional Services ("DOCS"), and at all times relevant to this lawsuit, I was employed as the Regional Medical Director for the "Elmira hub" of Correctional Facilities. As the name implies, the Elmira Correctional Facility ("Elmira") is one of the seven Facilities located in the Elmira hub.

    2.  I make this declaration in support of the defendants' motion for Summary Judgment, based upon my personal knowledge and review of documents pertaining to plaintiff's incarceration by DOCS.

    3.  In this action, plaintiff alleges that the various defendants were deliberately indifferent to his medical needs, and that I am liable for such indifference. Specifically, the plaintiff claims that I was responsible for:

        a.      the discharged of the plaintiff on December 16, 1999, from the infirmary at Elmira to his cell block, despite his being in pain from an infection he developed

    following a discogram (See Complaint ¶¶ 6 to 12);

 b. plaintiff being required to walk to get his medication following this discharge (See Complaint ¶¶ 13 to 14);

 c. the plaintiff's pain medication being reduced (See Complaint ¶ 14);

 d. approving of Nurse Practitioner Herman Fowler's cancellation of plaintiff's shoulder surgery which was scheduled for December 15, 2000 (See Complaint ¶¶ 84 to 86);

 e. refusing to provide plaintiff with allergy shots and sanctioning the alleged refusal of Nurse Administrator Marijon Hopkins, to give the plaintiff proper allergy serum (See Complaint ¶¶ 101 to 115);

 f. refusing plaintiff's request to be housed in the infirmary to avoid pollen, dust and second-hand smoke (See Complaint ¶¶ 141, 143, and 158);

 g. denying the plaintiff's right to privacy by requiring that inmates report to sick call two at a time (See Complaint ¶¶ 180 to 191);

 h. refusing to allow the plaintiff to obtain corrective lenses from an outside source (See Complaint ¶¶ 169 to 202);

 i. refusing to provide the plaintiff with a low fat/low salt kosher diet, which, he alleges, caused elevated blood pressure (See Complaint ¶¶ 203 to 215);

 j. depriving the plaintiff of sick calls when he entered them into the sick call box (See Complaint ¶¶ 250 - 253); and

 k. not providing plaintiff with copies of his post treatment plan (See Complaint ¶¶ 254 - 260).

I deny that I was deliberately indifferent to any of the plaintiff's medical needs, and will address each allegation as follows.

 4. At all times relevant to the instant case I had no personal knowledge of the events alleged by the plaintiff.

 5. I did not create or endorse any policy or custom that allowed the above alleged events to occur.

6. As Regional Medical Director I am responsible for overseeing the delivery of medical care to thousands of inmates in the Elmira hub. I do not directly provide health care to any of the individual inmates, including the plaintiff. The actual medical care of the inmates is the responsibility of the physicians employed by DOCS to care for inmates at Elmira, and the Facility Medical Director.

7. As Regional Medical Director, I coordinate the implementation DOCS policy regarding the medical care and treatment provided to inmates within the Elmira hub. I also routinely visit the seven Facilities in the Elmira hub, and meet with the physicians and other medical service providers employed at these facilities, to insurer that all inmates in the hub are being provided with an acceptable level of medical care. During those visits I am occasionally approached by inmates. Any complaints made to me in that situation are investigated and, if substantiated, appropriate action is taken.

8. I did not make any of the decisions involving the treatment of the plaintiff for any of the issues addressed in the Complaint, such as the treatment he received following his discogram and the subsequent infection, including the level of medication which he was provided or when he was discharged from the infirmary.

9. I also had no direct knowledge or participation in the scheduling or postponement of the surgery on his shoulder, or the delivery of his allergy shots.

10. It should be noted in this context that the fact that a specialist consultant recommends a particular medication, test or procedure, does not make the recommendation an "order". A consultant recommends treatment, however, whether a particular procedure or test is performed or treatment provided is not at the discretion of the specialist consultant. Only an inmate's DOCS provider can "order" tests, procedures, and treatment and many procedures and tests must

be approved at the DOCS Central Office in Albany. An inmate's primary medical provider decides whether or not to take a specialist consultant's recommendations.

11. As to Mr. Davidson's allegations regarding his housing, I can state that the infirmary is intended for inmates that are in need of constant medical care and attention. It is not an appropriate location for long term housing of an inmate suffering from allergies. Contrary to the plaintiff's contention, the infirmary at Elmira does not have a regulated environment with sealed windows. While the infirmary is air conditioned, and some of the isolation rooms in the infirmary have special ventilation necessary for isolation of persons with infectious diseases, the windows are not sealed.

12. Further, as Regional Health Services Director I had no role or ability to determine where in the Facility an inmate is housed. While an inmate's treating physician can recommend a location for an inmate to be housed, the final decision is up to the security staff.

13. It should also be noted that DOCS policy has prohibited the smoking of tobacco products indoors, by both inmates and staff, since 2001. However, as a Regional Health Services Director I have no role in enforcing inmate disciplinary rules or staff disciplinary rules (with the exception of the medical staff under my supervision), including the no smoking rule.

14. With regard to the plaintiff's allegations of violations of privacy at sick call, I was not made aware of any complaints by the plaintiff or any other inmate as to the plaintiff's allegation that sick call was conducted two inmates at a time, such that one inmate could overhear the other.

15. I have no knowledge of any of the plaintiff's alleged problems obtaining eyeglasses, since none were ever brought to my attention. Further, as Regional Health Services Director I do not have any control as to where or how DOCS arranges to provide corrective lenses for inmates.

16. I was not aware that Mr. Davidson's alleged that his requests for sick call were ignored,

prior to the filing of this action. However, as Regional Health Services Director, I do not personally over see how sick calls are scheduled. Had I known that there was an issue with inmates being denied sick call, I would have looked into it.

17. With regard to the plaintiff's allegation that I refused to provide him with a low fat/low salt kosher diet, Elmira did provide a low fat/low salt diet. I have no reason to believe that the low fat/low salt diet was anything but low in fat and low in salt. As a Regional Medical Director I have no role in determining the contents of the kosher diet.

18. With regard to the plaintiff's allegations that he was denied access to his post treatment plan, although I did not make this specific decision, the fact is that post treatment plans issued by hospitals are for the use of the facility medical staff in treating the plaintiff after his release from a hospital. Generally, patients (whether inside or outside of prisons) do not have an absolute right to access their medical records.

19. I am advised that the plaintiff alleges that he spoke to me regarding some of the issues alleged in his Complaint. I have no memory of that having occurred. I have no memory of any contact with plaintiff regarding his allegations.

20. With regard to the Grievance Process, Grievances are initially processed at the facility level. Grievance appeals thereafter are processed by DOCS' Central Office Review Committee. As Regional Medical Director I have no role in the processing of Grievances.

21. Although I have never been personally involved in any of the matters about which plaintiff complains, I assume that his concerns were addressed appropriately, professionally, and correctly in a manner which insured both the safe operation of the Correctional Facility and the preservation of plaintiff's rights.

22. Accordingly, I respectfully request that this Honorable Court grant this Motion for

Summary Judgment and dismiss the plaintiff's complaint.

DATED: October  22 , 2009

                                                                                       /s/ Marshall Trabout
                                                                                         Marshall Trabout