UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RONALD DAVIDSON,

                    PLAINTIFF,

          v.

UDAK K. DESAI, M.D., ET. AL.,

                    DEFENDANTS.

FILED
SEP 8 2010
MICHAEL J. ROEMER, CLERK

ORIGINAL
RECEIVED AND FILED
UNITED STATES DISTRICT COURT CLERK
WESTERN DISTRICT OF NEW YORK

AFFIDAVIT IN OPPOSITION
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

03-CV-121S(F)

SEP 8 2010

BY: _____

Pursuant to 28 U.S.C. § 1746, plaintiff Ronald Davidson, pro se, swears under penalty of perjury to the truth of the following statements.

1.  I make this affidavit in opposition to defendants' motion to dismiss pursuant to F.R.C.P. 56(H) and motion for summary judgment pursuant to F.R.C.P. 12(C) and 56 (a) along with my annexed memorandum of law in opposition to said motion (defendants' motion is dated 18 November 2009).

2.  At the outset, I reiterate all of the allegations set forth in the 260 paragraphs of my complaint.

3.  I also respectfully request that the Court review the transcript of the deposition conducted of me by AAG Darren Longo on 20 June 2007, and the documentary exhibits I provided to him at that deposition.  (For the Court's convenience I attach a copy of those documents as Exhibit "A.")

4.  Additionally, attached hereto is the DOCS' Smoke-Free Policy dated 30 June 1999 which I contend has never been adhered to by defendants, including to this date.   Along with the Smoke-Free Policy are copies of tobacco products invoices (cigarettes, cigars, rolling tobacco) covering purchases at the Elmira prison for approximately one year before the Smoke-Free policy went into effect and for approximately one year after said policy went into effect.  Exhibit "B."

5.  As the Court can see by the invoices obtained by me pursuant to a FOIL request, the amount of tobacco purchased by the DOCS' Elmira prison commissary for re-sale to the prisoner population is virtually identical, i.e., there is no difference between the amount of tobacco products purchased and sold by the DOCS defendants prior to or after their policy went into effect--thus supporting my contention that the policy is a sham and isn't strictly enforced.

6.  I submit that the invoices would convince a jury of my claims that defendants failed/refused to enforce their own Smoke-Free Policy as well as N.Y.S. law in effect long before their Smoke-Free Policy was ostensibly put into effect, i.e., Public Health Law's Clean Indoor Air Act (Article 13-H).

-2-

7.   Exhibit "C" shows affidavits and grievances attesting to sick call slips "lost" by defendants and denials of sick call.

8.   The Court's attention is also called to the deposition exhibits referred to as Exhibit "A" above (defendants' deposition exhibits "E", "F", "G", "H", "I", "J","K","L", "M", "N") that show that defendants were well aware of my serious medical condition due to MRI reports showing progressive deterioration of my spine, letters from Kenneth Friedman, Esq. from a prominent New York City law firm, a letter from Jerrold Nadler, Member of Congress, etc., or should have been aware of my serious medical condition but failed to provide me with adequate care or the follow-up care ordered by specialists.

9.   This included failing to send copies of the MRI films and report despite being ordered several times by SUNY Health Science Center at Syracuse Staff. Exhibit "D", consultation report dated 2/1/01.

10.  Attached as Exhibit "E" are documents pertaining to the denial of pain medicine (methadone) ordered by pain specialists at SUNY Health Science Center at Syracuse.

11.  Attached as Exhibit "F" are documents from SUNY Upstate Medical Center dated 09 January 2001 and 04 January 2001 supporting the fact that my surgery was cancelled with Dr. Mosher not because of any failure on my part to adhere to SUNY's TB Control Program but as retaliation on the part of defendants.

12.  It is noted that I never tested positive for TB nor did I exhibit any respiratory problems.  Furthermore, per SUNY's TB Control Policy I should have been given the option of wearing a surgical mask (which I would have done) if SUNY staff felt that was necessary if they weren't satisfied with my chest x-ray on file.  I was never given that option.  Instead, defendant Fowler, et. al., contacted Dr. Mosher and arranged for the surgery to be cancelled.  To date, that surgery has never been re-scheduled despite my numerous requests.

13.  The other attached documents amply support my allegations and the need for a jury to make determinations of fact.

Accordingly, defendants' motion should be denied in all respects.

Dated:  21 August 2010

Ronald Davidson
P.O. Box 700, #76A1166
Wallkill, NY  12589-0700

To:  George M. Zimmermann, AAG
     NYS Dept. of Law
     350 Main Street, Ste. 300A
     Buffalo, NY  14202

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RONALD DAVIDSON,                              Docket No.:   03-CV-0121

               PLAINTIFF,

    -vs-

UDAY DESAI, et. al.,

              DEFENDANTS.


PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS PURSUANT TO F.R.C.P. 56(a)
AND MOTION FOR SUMMARY JUDGMENT PURSUANT
TO F.R.C.P. 12(C) and 56(a), DATED
18 NOVEMBER 2010


Ronald Davidson
Pro Se
#76A1166
Shawangunk Correctional Facility
P.O. Box 700
700 Quick Road
Wallkill, NY  12589-0700


Dated:   21 August 2010


Copy To:

George M. Zimmermann, AAG
NYS Dept. of LAw
350 Main Street, Suite 300A
Buffalo, NY  14202

## STATEMENT OF FACTS

Plaintiff respectfully refers the Court to my extensive and detailed
complaint tin this action (260 paragraphs), the transcript of the
deposition conducted by the assistant attorney general and the
documents provided by me to the AAG at said deposition along with
the documents attached as exhibits to my affidavit in opposition
to which this memorandum of law is annexed to.

## POINT 1

### DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS

Plaintiff alleges that defendants were deliberately indifferent
to hi serious medical needs in violation of his rights under
the Eighth Amendment, as incorporated by the Fourteenth Amendment.
The Eighth Amendment prohibits the infliction of "cruel and unusual
punishment," U.S. Const. amend VIII, which includes punishments that
involve "the unnecessary and wanton infliction of pain."
Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v.
Georgia, 428 U.S. 153, 173 (1976)).   "This is true whether the
indifference is manifested by prison doctors in their response to
prisoner's needs or by prison guards in intentionally denying or
delaying access to medical care or intentionally interfering with
the treatment once prescribed." Estelle , 429 U.S. at 104-05.

A genuine issue of material fact exists as to whether defendants
provided plaintiff with adequate medical care ordered by specialists
as set forth in the complaint sworn to under penalty of perjury.
Regarding my serious back condition, the defendants provided me
with over one thousand pages of medical records.  These records
attest to the fact that defendants failed to heed the treating
specialist's orders, e.g., at medical record Bates numbered 508,
an entry was made presumably by John D'Souza, M.D., a specialist
at the University of Rochester Medical Center, as follows:  "call
doctor for fever or progressive worsening back pain immediately."
This entry was dated 11/24/99.  The Court is also referred to
medical records Bates numbered 509 and 510.  Yetdespite these
clear-cut orders and my numerous pleas and letters from an
attorney representing me pro bono in an unrelated action at
the time (Kenneth D. Friedman), defendants refused to call
URMC, Dr. D'Souza or return me immediately to URMC.  This
despite an MRI showing serious deterioration of my lower spine
taken shortly after an MRI was done on 11/29/99 on an emergency
basis when I was transported to a local hospital via ambulance
from the Elmira prison infirmary and returned via ambulance to
Elmira's infirmary that same day.  (A copy of a letter from
Kenneth D. Friedman, Esq., dated 24 December 1999 addressed
to Shige-Hisa Okawara, M.D., which was copied to defendants
Floyd Bennett and Dr. Uday K. DeSais is attached as an exhibit
to my affidavit in opposition to defendants' instant motion.)

In fact, at medical record Bates numbered 72, a neurosurgical
trip was cancelled on 27 December 1999 with no explanation given.
Upon information and belief defendant Floyd Bennett ordered the
cancellation appointment scheduled for 27 December 1999.

It is noted that although defendants' counsel stated he would
provide all medical records relevant to the time periods covered
by the complaint at no charge to me in order to avoid this Court's
order compelling DOCS officals from providing me with sufficient
access to my medical files in order to prosecute this action and
defend against the instant motion, there is a lapse in the
provided medical records during a crucial stage of this complaint,
i.e., at Bates medical record numbered 64 dated 11/26/99 to the
next entry dated 12/15/99.  The Court should compel the production
of that lapse in records to the Court and me.

The Court is also respectfully requested to review the transcript
of my deposition taken by the AAG in this action which proves
that my deposition testimony was neither fanciful nor replete
witht he level of contradictions and inconsistencies which would
cast doubt upon its plausibility.  See Shabazz v. Pico, 994 F. Supp.
460, 470-71 (S.D.N.Y. 1998) (disposing of improbable allegations
replete with inconsistent and contradictory statements); see also
Jeffreys v. City of New York, 426 F. 3d 549 (2d Cir. 2005).

My complaint along with my instant affidavit and exhibits, my
deposition testimony and documents provided to the AAG at said
deposition make out a prima facie case and supports my contention
of supervisory responsibility and liablity under the Williams
doctrine and Hernandez v. Keane, 341 F. 3d 137, 145 (2d Cir. 2003).

Aside from supervisory liability, a genuine issue of material
fact exists as to the physician defendants for failing to follow
specialists' orders that caused me excrutiating pain and damage
in terms of my back problems and the other medical issues set
]forth in the compalint that are, in objective terms, "sufficiently
serious."  Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994 (citing
Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  The complaint, my
deposition testimony and the documents provided to the AAG at the
deposition, along with my instant affidavit with exhibits submitted
in opposition to defendants' instant motion satisifies both the
objective and subjective component required.  Chance v. Armstrong,
143 F. 3d 698 , 702 (2d. Cir 1998).  (The documentary exhibits alone
support my contention that defendants knew of and disregarded an
excessive risk to my health, were aware of the facts from which the
inference could be drawn that a substantial risk of serious harm
existed  and must have drawn that inference.  Chance  143 F. 3d at
702 (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Thus, the
subjective prong has been met.))

Given the delay in returning me to the care of University of
Rochester Medical Center specialists (despite my lawyer's letter
and my constant complaints putting defendants on notice of the
complained of issues) despite the clear orders of John D'Souza,
M.D. dated  11/24/99 and the refusal of defendants to comply with
other URMC specialists as set forth in the complaint, a genuine
issue of material fact exists as to whether defendants acted with
a "culpable state of mind."  Wilson  501 U.S. 294.  This mental
state requires that the charged official acted or failed to act

-- 3 --

while actually aware of a substantial risk that serious
inmate harm will result." Salahuddin v. Goord, 467 F. 3d 263,
279-80 (2d Cir. 2006). This mental state is equivalent to
subjective recklessness. Farmer v. Brennan, 511 U.S. 825, 836-
37. "It is well-established that mere disagreement over the
proper the proper treatment does not create a constitutional
claim. So long as the treatment given is adequate, the fact
that a prisoner might prefer a different treatment does not
give rise to an Eighth Amendment Violation." Chance v. Armstrong,
143 F. 3d 698, 703 (2d Cir. 1998). However, "a physician may be
deliberately indifferent if he or she consciously chooses 'an
easier and less efficacious' treatment plan." Id. (citing Williams
v. Vincent, 508 F. 2d 541, 544 (2d Cir. 1974). See also Colon v. Coughlin.

In the case at bar a genuine issue of material fact exists as
to whether defendants chose such an easier and less efficacious
treatment plan when they ignored Dr. D'Souza's orders to
immediately return me to URMC if the complained of problems
arose and instead chose to place me in the prison infirmary
on I.V. antibiotics. This genuine issue of material fact is
further supported by the results of a follow-up MRI done on 01/25/00,
shortly after the one performed on 11/29/99 showing extensive
damage to my spine--damage not present on the 11/29/99 MRI.
The factual allegations in my complaint coupled with documentary
evidence makes out a prima facie case as to whether defendants
engaged in an "unreasonable delay or interruption in that treatment
rather than the prisoner's underlying medical condition alone."
Salahuddin, 467 F.3d at 280 (citing Smith v. Carpenter,316 F.3d
178, 185 (2d Cir. 2003) (internal quotations omitted) (emphasis
omitted). This certainly also covers the allegations of denial
of specialists' ordered medical care as set forth in the complaint,
e.g., the denial of the allergy desensitation injections and housing
free from second-hand cigarette and other tobacco smoke, etc.
These factual allegations coupled with my documentary evidence
for a reasonable jury to conclude that these defendants knew of
and disregarded an excessive risk to my health. See Brock v.
Wright, 315 F.3d 158, 164 ("evidence that risk was obvious or
otherwise must have been known to a defendant is sufficient to
permit a jury to conclude that the defendant was actually aware
of it.").

Additionally, denial of summary judgment ia appropriate where
there is "a substantial departure from accepted professional
judgment and that the evidence of risk was sufficiently obvious
to infer the defendants actual knowledge of a substantial risk
to plaintiff." See Stevens v. Goord, 535 F.Supp. 2d 373, 385 (S.D.N.Y.
2008).

Counsel in his brief contends that defendants actions did not
place me in extreme pain (pg. 7 of defendants' memorandum of law).
How counsel could make such a ridiculous and outrageous claim is
unimaginable as neither he nor his clients can state the level of
pain I felt at all times relevant to this action (and to the present
date). However, it is noteworthy that defendants sent me to pain

-4-

management physicians at SUNY Health Science Center at Syracuse
and that they prescribed **methadone** to control my pain, which
defendants provided to me until they abruptly discontinued it.
(The discontinuation of the methadone is also part of an unrelated
action in which I claim retaliation by Wesley Canfield, M.D., et.
al., for the bringing of the instant action. Davidson v. Canfield,
et. al., Docket No. 07-CV-0599  is pending in this courthouse.)

The recurring defense theme is that defendants referred me to
outside medical consultations and enacted smoking policies that
they allege "medical defendants had no power to enforce..." (page
9 of defendants instant memorandum of law).

However, sending me to outside medical consultations is meaningless
if the specialists' orders are ignored or discontinued by defendants
without consultation with and approval by the specialists. Additionally,
it is my claim that the medical defendants had all of the authority to
enforce the no-smoking policy as it certainly pertained to my health
and the health of everyone else in the prison. Moreover, in my case
in order to enforce the specialist's orders they need only have housed
me in the infirmary which is smoke-free.
The Court is also reminded of another prisoner's 42 U.S.C. 1983 in
this district dealing with exposure to second-hand smoke in which
summary judgment was denied to defendants in plaintiff Cedric Reid's
case. (I previously brought this case to the Court's attention
when it was reported in the New York Law Journal circa April of
2010. Mr. Reid is represented by Benjamin R. Dwyer, Esq., of
Nixon Peabody, Buffalo, N.Y.)

As for the remaining claims, defendants counsel simply makes
onclusory statements or offers his opinion as to what he deems
to be non-serious allegations of my constitutional rights.
However, these amount to genuine issues of material fact that
only the fact-finder may determine.

CONCLUSION

Plaintiff has shown that genuine issues of material facts exists
that require a jury trial. Accordingly, defendants' motion should
be denied in all respects.

Dated:  21 August 2010

*Ronald Davidson*

Ronald Davidson
P.O. Box 700, #76A1166
Wallkill, NY 12589-0700

To:  George M. Zinnermann, AAG
     NYS Dept. of Law
     350 Main Street, Ste. 300A
     Buffalo, NY 14202