UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| RONALD DAVIDSON, | **PLAINTIFF'S TRIAL BRIEF** |
| Plaintiff, | |
| -vs- | **No: 03-CV-0121** |
| UDAY DESAI, et al. | |
| Defendants. | |

_____

Plaintiff Ronald Davidson ("the plaintiff"), by his attorneys, Hagerty & Brady, hereby submits his trial brief.

## Introduction

This case involves a claim for money damages under 42 U.S.C. § 1983. The plaintiff, Ronald Davidson, alleges that the defendants, Uday K. Desai, M.D., Cheng Yin, M.D., Herman Fowler, N.P., Floyd Bennett, R.N., Calvin West, Marijon Hopkins, R.N., Sheryl Graubard, Dana Smith, and Wesley Canfield, M.D., deprived him of his constitutional rights under the Eighth Amendment by: (1) failing to see that the plaintiff had left shoulder surgery that had been determined to be medically necessary; (2) failing to renew and/or allowing to lapse for periods of time the plaintiff's prescription for methadone which was used to treat his chronic back pain, causing him to experience episodes of withdrawal; and (3) failing to enforce a policy

1

banning smoking indoors, thereby causing the plaintiff to be exposed to second hand smoke, aggravating his asthma and allergies. The plaintiff also alleges that the defendants deprived him of his rights under the First Amendment by failing to schedule his left shoulder surgery as retaliation for the plaintiff's filing of grievances, a constitutionally protected activity.

## Statement of Facts

1. At all times relevant to this trial, the plaintiff was an inmate in the care and custody of the New York State Department of Correctional Services ("DOCS") at the Elmira Correctional Facility and later at Shawangunk Correctional Facility. The plaintiff entered into the custody of DOCS in 1976. Currently the plaintiff is no longer in the custody of DOCS. He is on parole as of April 5, 2016.

2. The plaintiff was housed at Elmira Correctional Facility ("Elmira") from June of 1998 until December 24, 2004.

## Defendants' Failure To Schedule Medically Necessary Surgery

3. Prior to his arrival at Elmira, in April 1998, the plaintiff was handcuffed, with his hands placed behind his back, by correctional facility officers during a disturbance at another correctional facility.

4. As a result of this incident, the plaintiff began experiencing significant and recurring pain in both shoulders, particularly in his left shoulder.

5. The plaintiff reported his shoulder pain multiple times to defendant Dr. Desai and requested an orthopedic consult.

6. Ultimately, Dr. Desai requested a consult for the plaintiff's shoulder pain by Dr. John Mosher, a board-certified orthopedic surgeon. Dr. Mosher did not work for DOCS, but his employer, Wexford Health Sources, Inc., was under contract with DOCS.

7. Dr. Mosher examined the plaintiff at SUNY Upstate Medical Facility in Syracuse, New York, on September 5, 2000.

8. Dr. Mosher determined surgery on the plaintiff's left shoulder was medically necessary. Specifically, he recommended resection of the distal clavicle.

9. Defendants Dr. Desai and Dr. Yin agreed with Dr. Mosher's recommendation and ordered the surgery.

10. The plaintiff's surgery was scheduled for November 10, 2000. However, that surgery was abruptly canceled on the purported basis that the plaintiff refused to have a chest x-ray, even though the plaintiff had had a chest x-ray within one year of the scheduled surgery, in compliance with SUNY Upstate Medical Facility policy.

11. Thereafter, the plaintiff agreed to have a chest x-ray, and the left shoulder surgery was rescheduled for December 15, 2000.

12. The plaintiff was ordered not to eat or drink the night before his December 15, 2000 surgery. However, on December 15, 2000, the plaintiff was informed, without explanation, that the surgery would not go forward.

13. Thereafter, despite a determination by defendants Desai and Yin and the opinion of Dr. Mosher that surgery on his left shoulder was medically necessary, the defendants, including Dr. Desai, failed to arrange for the plaintiff to have left shoulder surgery.

14. As a result, the plaintiff continued to suffer chronic and significant pain in his left shoulder.

15. Ultimately, on or about June 2015, the plaintiff was referred to another board-certified orthopedic surgeon, Dr. Stephen Holder, who concluded, like Dr. Mosher, Dr. Desai, and Dr. Yin, that surgery on the plaintiff's left shoulder is medically necessary.

16. Just before being released from incarceration in April 2016, the plaintiff was advised by prison authorities that he was being scheduled for left shoulder surgery–the very surgery that was scheduled and then canceled in December 2000, which gave rise to this lawsuit.

17. The prison authorities at Shawangunk Correctional Facility advised the plaintiff that he would need to remain in prison an additional 6 to 8 weeks so that he could be under supervision following the surgery. This is despite the fact

that, on information and belief, such surgery is typically done on an out-patient basis.

18.     The plaintiff was essentially being asked to consent to self-incarcerate himself for an additional 6 to 8 weeks. The plaintiff declined the surgery under those conditions.

**Defendants' Illegal Retaliation for Plaintiff's Use of the Grievance Program**

19.     DOCS maintains a grievance program for inmates to make formal complaints regarding the conditions at DOCS facilities.

20.     Upon information and belief, defendants Fowler, Desai, Yin, Canfield and others canceled and thereafter failed to reschedule the plaintiff's left shoulder surgery in retaliation for the plaintiff's filing of grievances in accordance with the grievance program.

**Defendants' Failure to Renew and Refill Plaintiff's Prescribed Pain Medication**

21.     Throughout this time period, the plaintiff suffered from chronic degenerative disc disease, which caused chronic back pain.

22.     As a result, the plaintiff was prescribed pain medication, including methadone, which induced a chemical dependence on the drug.  This is a physiological side effect commonly experienced by patients who are prescribed this drug.

23. Despite the awareness of defendants Desai, Yin, and Canfield of the plaintiff's chemical dependence on methadone, the defendants allowed the plaintiff's prescription for methadone to lapse for days at a time. As a result, the plaintiff experienced serious and painful symptoms of withdrawal.

**Defendants' Failure to Enforce Smoking Ban**

24. When the plaintiff entered the custody of DOCS in 1976, he did not suffer from asthma or other respiratory disorders.

25. The plaintiff has never smoked.

26. While in the custody of DOCS at Elmira, the plaintiff experienced symptoms of and was ultimately diagnosed with asthma.

27. Asthma can be caused and exacerbated by second-hand smoke exposure.

28. The plaintiff's asthma was exacerbated by ubiquitous second-hand smoke within the interior of the Elmira Facility.

29. The plaintiff made repeated complaints to DOCS regarding his exposure to second-hand smoke at Elmira and requested housing in an area protected from second-hand smoke.

30. Despite the fact there was a policy banning smoking indoors at Elmira, defendant Floyd Bennett failed to enforce the no-smoking policy and refused to house the plaintiff in an area protected from second-hand smoke,

causing the plaintiff to be exposed to second-hand smoke and causing him to experience symptoms of asthma and endure pain and suffering.

## Relevant Legal Principles

31. The Court has jurisdiction over this matter because this is an action to recover damages under 42 U.S.C. § 1983. Each of the plaintiff's causes of action alleges a violation of a right guaranteed by the United States Constitution. Thus this Court has original jurisdiction under 28 U.S.C. § 1331, 1343, and 2201.

## Applicable Points of Law

32. The Eighth Amendment protects prisoners from cruel and unusual punishment in the form of unnecessary and wanton infliction of pain at the hands of prison officials and conduct that offends evolving standards of decency. Hudson v. McMillan, 503 U.S. 1, 5, 8 (1992).

33. "To establish an Eighth Amendment violation based on a claim that a prison official has placed an inmate's health in danger, the inmate must show that the prison official acted with deliberate indifference to the inmate's serious medical needs." Denis v. N.Y.S. Dept. of Correctional Services, No. 05-Civ-4495, 2006 WL 217926 at *13 (S.D.N.Y. Jan. 30, 2006) (internal quotation marks deleted).

34. The Second Circuit has held that deliberate indifference includes denials of medically necessary treatment that perpetuate pain. "[T]he Eighth Amendment forbids not only deprivations of medical care that produce physical

torture and lingering death, but also less serious denials which cause or perpetuate pain." Brock v. Wright, 315 F.3d 158, 163 (2d Cir. 2003) quoting Todaro v. Ward, 565 F.2d 48, 52 (2d Cir. 1977).

35. The Second Circuit has explained, "the deliberate indifference standard embodies both an objective and a subjective prong." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). Objectively, the alleged deprivation must be "sufficiently serious." Id., at 553.

36. Although there is no precise metric to determine the seriousness of the deprivation, the Second Circuit has considered the following factors: (1) whether a reasonable doctor or patient would perceive the medical need in question as "important and worthy of…treatment," (2) whether the medical condition significantly affects daily activities, and (3) "the existence of chronic and substantial pain." Brock, at 162.

37. In order to prove a deprivation of First Amendment rights due to retaliation, a plaintiff must prove: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action. Filing of prison grievances is constitutionally protected activity. Davis v. Goord, 320 F.3d 346, 352-353 (2d Cir. 2003).

## Damages

38.     The plaintiff demands compensatory damages on each cause of action, as well as punitive damages should the Court find them warranted, together with attorney's fees as allowed by 42 U.S.C. § 1983.

DATED:     March 13, 2017.
           Buffalo, New York,

                                                               */s/ Michael A. Brady*
                                                               Michael A. Brady
                                                               Daniel J. Brady
                                                               HAGERTY & BRADY
                                                               *Attorneys for the Plaintiff*
                                                               69 Delaware Ave. Suite 1010
                                                               Buffalo N.Y. 14202
                                                               (716) 856-9443 office
                                                               (716) 856-0511 fax
                                                               mbrady@hagerty-brady.com
                                                               dbrady@hagerty-brady.com